(26 App. Div. 592.)

PEOPLE ex rel. REIDY v. GRADY et al.

(Supreme Court, Appellate Division, Second Department. March 22, 1898.)

DISMISSAL OF POLICEMAN.

Upon certiorari to review the action of the police commissioners of Long Island City in dismissing relator from the police force, *held*, that the right to dismiss depends upon a conviction of some infraction of the rules of the department, or of law, and the mere passage of a resolution of dismissal, after a hearing upon specific charges, without finding the accused guilty of some portion thereof, is of no more effect than if done without such hearing.

Certiorari by the people, on the relation of Peter Reidy, against John T. Grady and others, constituting the board of police commissioners of Long Island City, to review action in dismissing relator from the police force. Dismissal set aside.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

George A. Gregg, for relator.
Almet F. Jenks, for respondents.

WOODWARD, J. The relator was appointed a policeman of the city of Long Island City in 1883, serving continuously up to the 19th day of March, 1897, when he was removed from office, after a hearing before the police commissioners of that city, upon two charges. These charges were: (1) "Disobeying orders and neglect of duty;" and (2) "conduct unbecoming an officer, and making a false return." The specifications were that the "said patrolman Peter Reidy, of the Second precinct, did, on or about the 4th of January, 1897, at Long Island City, neglect or refuse to serve subpœnas upon Timothy Carney, Mrs. Carney, and daughter, or any of them, in the case of the people against John Fossman, although he had been personally ordered and directed so to do by his superior officer, Acting Sergeant Flanagan"; and that the said Reidy had made "a false and untrue return that he had on the 4th of January, 1897, at Long Island City, personally served subpœnas in the case of the people against John Fossman on each of the following named persons, viz. Timothy Carney, Mrs. Carney, and daughter, by showing original subpœnas to and delivering a copy thereof to each of the said persons personally, whereas, in truth and fact, he never served subpœnas on any one of the said persons; that by reason thereof Charles T. Duffy, justice of peace, was obliged or compelled to adjourn said case, owing to the absence of the said persons or witnesses." On the trial, which took place on the 23d day of January, 1897, all of the police commissioners being present, there was no evidence introduced to show that the justice of the peace, or his court, had been in any wise inconven-

ienced by the alleged conduct of the relator, and that much of the charge is therefore entitled to no consideration. It was clearly established upon the trial that the relator did serve the subpœna upon Mrs. Carney and daughter, and that after going twice to the house of Timothy Carney, and failing to find him, the relator, at the suggestion of Dennis Carney, a brother of Timothy Carney, left the subpœna with Dennis Carney, the latter agreeing to serve the same, as he afterwards did, upon Timothy, the next morning. After delivering the subpœna to Dennis Carney, relator met Timothy Carney, and told him that he had a subpœna for him, but that it was then in the hands of his brother, Dennis, and Timothy replied that he would be on hand. The relator, relying upon the promise of Dennis to serve the subpœna, and following the usual custom, made out the formal papers, declaring the service of the subpœnas upon all the parties to whom they were directed; and it appears from the record that Timothy Carney was absent from court not from any lack of regularity in the serving of the subpœna, but because, after being out of employment for some time, he was given an opportunity to work, and in the contemplation of this employment he forgot to obey the summons. At the close of the case the relator, through his attorney, moved to dismiss the charges, upon various grounds, including a motion to dismiss the charge of failure to serve subpœnas on Mrs. Carney and daughter on the uncontradicted evidence that he had personally served her, and the decision of the commissioners was reserved until the stenographer's minutes were written up, and the motion was never granted. On the 19th day of March the record shows that the board of police commissioners held a meeting, and that the following resolution was adopted: "By Commissioner Jordan: Resolved, that said patrolman Peter Reidy be, and he is, forthwith, dismissed from the police department of Long Island City, its service and employ." It does not appear that the board of police commissioners ever passed upon the motion to dismiss that portion of the charges which related to the service of the subpœna upon Mrs. Carney and her daughter, or that it ever found him guilty of this or any other part of the charges. In fact, the board of police commissioners, so far as the record shows, does not seem to have reached any determination, except that the relator should be dismissed from the police department of Long Island City. This court is authorized, by section 2140 of the Code of Civil Procedure (subdivision 4), to determine "whether there was any competent proof of all the facts necessary to be proved in order to authorize the making of the determination"; and we are of the opinion that there was no "competent proof" of any facts which justified the board of police commissioners of Long Island City in coming to the determination which was reached in this case, without first determining that the relator was guilty of some of the material offenses charged. The right to dismiss from the police service depends upon the conviction of the relator of some offense. He must be guilty of some infraction of the rules and regulations of the police department, or of the laws of the state, or his tenure of office cannot be disturbed; and the mere passage of a resolution of dismissal, after a hearing upon specific charges, without

finding the relator guilty of some portion of the charges, is of no more effect than the same action would be without such hearing. It is apparent, therefore, that there could have been no legal conviction of the relator of any offense which would have justified his removal, and we are forced to conclude that the action of the board of police commissioners of Long Island City was contrary to law, and in derogation of the rights of the relator, and the determination should be annulled, and the relator restored to his position as patrolman. All concur.